UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

KATHRYN GALVIN-ASSANTI and )
LINDA RICCI-MCNIEL, )
    Plaintiffs, )
  )
    v. )
  )
ATLANTIC PROPERTIES )      C.A. No. 17-246-JJM-PAS
MANAGEMENT CORP., )
DIVERSIFIED FUNDING, INC.; )
BROAD STREET TRUST; MANSION )
HOUSE TRUST & SHOREWOOD )
APARTMENTS, )
    Defendants. )

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

    Plaintiffs Kathryn Galvin-Assanti (Ms. Galvin) and Linda Ricci-McNiel (Ms. Ricci) worked as property manager and leasing agent of apartment complexes, owned and/or managed by Defendant companies. Overworked, stressed, and suffering from medical conditions, Ms. Galvin and Ms. Ricci requested statutory medical leaves at the same time. While Ms. Galvin was approved and took her thirteen weeks, Ms. Ricci was not and took four weeks as a doctor mandated medical leave. At the end of their leaves, neither Plaintiff was medically cleared to return to work. Defendants terminated their employment and Plaintiffs now sue them, alleging that their terminations violated several state and federal statutes protecting them based on their gender, disability, and age. The Court will now recount the facts in more detail.

## I.   FACTS & BACKGROUND

Diversified Funding, Inc. (DFI) is a property management company for several residential apartment complexes in Rhode Island. ECF No. 70-2 at ¶ 1.[1]  Broad Street

---

[1] There are three motions rooted in statements of disputed and undisputed fact submissions in this case: Defendants' Motion to Strike (ECF No. 57) and two Motions to Amend/Correct from Plaintiffs. ECF Nos. 70, 72.  Essentially Defendants move to strike two summary judgment documents and Plaintiffs move to amend/correct those documents after the motion briefing has been completed. The Court must deal with these first in order to begin to address the material undisputed facts in this case.

As is typical in these types of disputes, Defendants argue that they are prejudiced by these new submissions (one of which contains six exhibits never previously cited) and Plaintiffs disagree. The course of this motion for summary judgment has been long and arduous for all involved. Prolonging it with more briefing will not advance the matter. Because this case involves the lives and livelihoods of two individuals and several local companies, the Court will take a substance over form approach and rules as follows:

Defendants move to strike (ECF No. 57) Plaintiffs' Statement of Disputed Facts (ECF No. 51) and Plaintiffs' Response to Defendants' Statement of Undisputed Facts (ECF No. 52).  Plaintiffs have since withdrawn their Statement of Disputed Facts (ECF No. 51) and have moved to amend/correct (ECF No. 72) that pleading with Plaintiffs' Statement of Undisputed Facts.  ECF No. 73.  They have also moved to amend/correct (ECF No. 70) their opposition to Defendants' Motion for Summary Judgment and their Response to Defendants' Statement of Undisputed Facts (ECF NO. 52) with Plaintiffs' Amended Response to Defendants' Statement of Undisputed Facts (ECF NO. 70-2).

The Court DENIES Defendants' Motion to Strike Plaintiffs' Statement of Disputed Facts (ECF No. 51) and Plaintiffs' Response to Defendants' Statement of Undisputed Facts (ECF NO. 52) as MOOT in light of Plaintiffs' withdrawal of the former and motion to amend/correct both. Defendants' Motion to Strike is DENIED. ECF No. 57.

The Court GRANTS Plaintiffs' Motion to Amend/Correct their opposition to Defendants' Motion for Summary Judgment and Responses to Defendants' Statement of Undisputed Facts.  ECF No. 70.  This opposition brief and responses align with what they provided before, albeit with improper argument that the Court did not consider and were useful to the Court in applying its standard of review.

Trust, Mansion House Trust, and Shorewood Apartments (Trust Defendants) are trust companies that are owners of individual apartment complexes. Atlantic Properties Management Corporation (Atlantic Properties) is a payroll leasing company that employs the people who work at these properties. Cheryl Foote, Controller at DFI, testified that Atlantic Properties charges the trusts or limited-liability companies that own the properties for each employee and those entities send a monthly payment to Atlantic Properties. *Id.* The property owners do not employ any people who work at the apartment complexes nor do they own any of the properties in common. *Id.* at ¶ 3.

Ms. Galvin was hired in April 2010 as a leasing agent. *Id.* at ¶ 5. She was promoted to property manager in February 2011, reporting to Paul LaPerriere. *Id.* at ¶ 6. Ms. Ricci was hired as a part-time leasing agent in October 2010, moving to a leasing manager position in March 2011. *Id.* at ¶ 12. Both were employees of Atlantic Properties, assigned to their duties by DFI. *Id.* at ¶ 4. Atlantic Properties gave Ms. Galvin an Employee Handbook and requested her to sign the Acknowledgment Form. *Id.* at ¶ 6.

Ms. Ricci and Ms. Galvin both recount incidents where they were unhappy in their jobs. They felt harassed, overworked, and underpaid compared to male co-

---

The Court DENIES Plaintiffs' Motion to Amend/Correct their Statement of Disputed Facts. ECF No. 72. The Court rejects Plaintiffs' Statement of Undisputed Facts submitted as an amendment (ECF No. 73). The amended document is procedurally and substantively improper, replete with legal argument and the Court agrees with Defendants that requiring them to respond to it is prejudicial.

workers.  Plaintiffs cite to comparable male employees who enjoyed more favorable compensation packages. *See id.* at ¶¶ 63.  For example, Ms. Galvin alleged that Todd Wilson got profit sharing and commission on certain properties and a company car, Karl Johnson got a company car, Rob Damiano got a larger lease-up bonus after her offer to do the work for less was rejected, and Ryan Glines did not have to work additional hours or weekends because they were men.  Ms. Ricci alleges the same about Messrs.  Wilson, Johnson, and Damiano and also alleges that the location of the office was unhealthy and contributed to her developing cancer.  *Id.*  In contrast, when Defendants asked Plaintiffs to take on added job responsibilities, managing additional units, they tried to renegotiate their compensation, but Defendants declined.  *Id.*

In the aftermath of these incidents, Ms. Ricci emailed a note from her chiropractor, asking for four weeks out of work and information about the Family and Medical Leave Act ("FMLA").  *Id.* at ¶ 33.  With another employee's termination and Ms. Ricci's medical leave, Defendants' operation was seriously short-handed.  Richard and Samantha Bendetson, Atlantic Properties and DFI President and Vice President, along with Mr. Wilson met with Ms. Galvin to see what help she needed to do her work.  *Id.* at ¶ 34.  She said she loved her job but claimed in her deposition that Ms. Bendetson's presence intimidated her that day.  *Id.*

On April 21, 2015, Ms. Galvin emailed a doctor's note requesting a four-week leave for stress, panic attacks, and anxiety.  *Id.* at ¶¶ 35-37.  Defendants asked her to get a second opinion and to call in to Mr. Wilson every morning as the Employee

Handbook requires. *Id.* at ¶ 38. She did both, though she testified that she was intimidated to make the phone calls to Mr. Wilson even though he never answered the phone. *Id.* at ¶ 39, 41. Ms. Galvin submitted periodic doctor's notes, writing her out of work until July 20, 2015.[2] *Id.* at ¶ 40.

Ms. Galvin did not return to work.[3] When asked at her deposition when she would have been able to return, she said she did not know, but offered it would be when she felt better and when her doctor cleared her. *Id.* at ¶ 45. Defendants wrote to Ms. Galvin on August 7, 2015, informing her that she was terminated effective July 23, 2015. *Id.* at ¶ 46.

Defendants responded to Ms. Ricci's request for FMLA information shortly after her April 19, 2015 request. *Id.* at ¶ 49. Submitting a certification form from a chiropractor, she requested leave for severe muscle spasms and severe loss of range of motion. *Id.* at ¶ 50. Defendants rejected her request, citing FMLA, because her chiropractor did not treat her with manual manipulation. *Id.* at ¶ 51. Ms. Ricci tried to get the certification that Defendants required, engaging Dr. Michele Pelosi to complete the certification. *Id.* at ¶¶ 52-54. Dr. Pelosi's report was inadequate, and Defendants denied Ms. Ricci's request for FMLA leave. *Id.* at ¶ 55. Defendants required her to return by June 1, 2015, offering to provide her with a reasonable accommodation upon her return. *Id.* at ¶ 56. Ms. Ricci emailed Ms. Foote, said that

---

[2] There was confusion in the communication between Ms. Galvin and Ms. Foote about her return to work date. Ultimately, Ms. Foote clarified that Ms. Galvin should return to work on July 20, 2015 or risk losing her job. ECF No. 70-2 at ¶¶ 43-44.

[3] Ms. Galvin's medical records indicated that she needed to be out of work until August 4, 2015 so she was not cleared to return in July. *Id.* at ¶ 47.

she could not return and did not ask for any accommodations, but shared that she would know if one would be helpful after further medical evaluations. *Id.* at ¶ 57.

She emailed Ms. Foote another chiropractor's note saying that she was receiving manual manipulation of the spine, but she was not cleared to return to work in June. *Id.* at ¶¶ 58-59. Defendants finally terminated her on August 7, 2015 when she was still unable to return to work. *Id.* at ¶ 60.

With Ms. Galvin's and Ms. Ricci's absences, Defendants hired Karl Johnson and Ryan Glines to fill in. Mr. Johnson, who had ten years' experience as a property manager, was hired to fill in for Ms. Galvin and when she returned, he would be moved to a similar position. *Id.* at ¶ 63. Ms. Galvin testified that she believed Defendants permanently replaced her with Mr. Johnson two weeks after she went out on leave. *Id.* at ¶ 64. Mr. Glines filled in for Ms. Ricci during her medical leave and remained on staff after she did not return. *Id.* at ¶ 65.

Believing their terminations violated federal and state law, Plaintiffs filed this seven count complaint against Defendants, alleging violations of the: Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-1, et seq. ("RIFEPA") (Count I); Rhode Island Civil Rights Act, R.I. Gen. Laws § 42-112-1, et seq. ("RICRA") (Count II); Title VII of the Civil Rights Act of 1964 ("Title VII") (Count III) for hostile work environment and retaliation based on gender; Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA") (Count IV) for discriminating against Ms. Ricci based on her age; Rhode Island Parental and Family Medical Leave Act, R.I. Gen. Laws § 28-48-1, et seq. ("RIPFMLA") (Count V); Federal Family and Medical Leave

Act of 1993, 29 U.S.C. § 2601, et seq. ("FMLA") (Count VI) for retaliation and discrimination in requesting medical leave; and Americans with Disabilities Act, 42 U.S.C. §12117 ("ADA") (Count VII) for retaliation, discrimination, and failure to accommodate reasonably their disabilities. ECF No. 1-2. Defendants have moved for summary judgment on all counts. ECF No. 39.

## II.   STANDARD OF REVIEW

When ruling on a motion for summary judgment, the Court must look to the record and view all the facts and inferences therefrom in the light most favorable to the nonmoving party. *Continental Cas. Co. v. Canadian Univ. Ins. Co.*, 924 F.2d 370, 373 (1st Cir. 1991). Once this is done, Rule 56(c) requires that summary judgment be granted if there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law. A material fact is one affecting the lawsuit's outcome. *URI Cogeneration Partners, L.P. v. Bd. of Governors for Higher Educ.*, 915 F. Supp. 1267, 1279 (D.R.I. 1996).

"Genuine issues of material fact are not the stuff of an opposing party's dreams. On issues where the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990)). Summary judgment evidence "cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve

at an ensuing trial." *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989).

## III.   DISCUSSION

The *McDonnell Douglas Corp. v. Green* case governs the Court's discrimination analysis here.  Because obvious evidence of intentional discrimination is often hard to come by, "courts have crafted a burden-shifting framework to be used in cases where direct evidence of intentional discrimination is lacking." *Sanchez v. Puerto Rico Oil Co.*, 37 F.3d 712, 719 (1st Cir. 1994) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 n. 8 (1981); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973).  "Under this framework, the initial burden is on the plaintiff, who must make a prima facie showing of discrimination." *Sanchez*, 37 F.3d at 719 (1st Cir. 1994).

Once this first hurdle is conquered, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's [termination]," sufficient to raise a genuine issue of fact about whether it discriminated against the employee. *McDonnell Douglas Corp.*, 411 U.S. at 802.  The employer "must clearly set forth, through the introduction of admissible evidence, the reasons for the [employee's termination].  The explanation provided must be legally sufficient to justify a judgment for the [employer]." *Burdine*, 450 U.S. at 255.

"If the employer's evidence creates a genuine issue of fact, the presumption of discrimination drops from the case, and the plaintiff retains the ultimate burden of showing that the employer's stated reason for terminating [her] was in fact a pretext

for retaliating against [her] for having taken protected [action]." *Hodgens v. Gen'l Dynamics Corp.*, 144 F.3d 151, 161 (1st Cir. 1998). In considering evidence of pretext, the court should focus "on the perception of the decisionmaker [employer] . . . and whether this perception was credible and reasonable." *Gray v. New England Tel. and Tel. Co.*, 792 F.2d 251, 256 (1st Cir. 1986). "It is not enough for a plaintiff merely to impugn the veracity of the employer's justification; he must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive [].'" *Mesnick*, 950 F.2d at 824 (quoting *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 9 (1st Cir. 1990)).

The Court will analyze each of Plaintiffs' claims in all counts under this burden-shifting framework if they prove the claim-specific prima facie case.

A.   COUNTS I, II, AND III—Gender Discrimination

Plaintiffs have alleged that Defendants violated the RIFEPA, RICRA, and Title VII[4] by treating them differently based on their gender and Ms. Ricci based on her age. They argue discrimination resulting in both a hostile work environment and retaliation.[5]

---

[4] The Rhode Island Supreme Court analyzes both RICRA and RIFEPA claims using substantive federal law from analogous causes of action. *Casey v. Town of Portsmouth*, 861 A.2d 1032, 1037 (R.I. 2004) (analyzing RICRA and RIFEPA claims together). Also, success in one generally carries with it success in the other, and vice versa. *E.g. Rathbun v. Autozone, Inc.*, 253 F. Supp. 2d 226, 236 (D.R.I. 2003), *aff'd on other gnds.*, 361 F.3d 62 (1st Cir. 2004) (analyzing RIFEPA claims under Title VII and finding that RIFEPA and RICRA claims rise and fall together).

[5] Defendants argue that Plaintiffs' complaint only alleges a hostile work environment related to their medical leaves and not concerning their gender and age. While the complaint allegations are general—Plaintiffs argue that the facts on each claim overlap—the Court finds that Defendants are on notice of a hostile environment

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment," 42 U.S.C. § 2000e–2(a)(1), or "to limit, segregate, or classify [her] employees ... in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect [her] status as an employee," 42 U.S.C. § 2000e–2(a)(2), based on a protected characteristic. RIFEPA and RICRA prohibit discrimination against an employee due to her race, color, religion, sex, sexual orientation, gender identity or expression, disability, age, or country of ancestral origin. R.I. Gen. Laws § 28–5–7(1), R.I. Gen. Laws § 42–112–1.

"The Supreme Court has articulated that, pursuant to that language, plaintiffs may establish a violation of Title VII by demonstrating that an employer required them to work in a hostile or abusive environment." *Franchina v. City of Providence*, 881 F.3d 32, 45 (1st Cir. 2018). To prove that they endured a hostile work environment based on gender or age discrimination, Plaintiffs must establish the following prima facie elements: (1) that they are members of a protected class; (2) that they were subject to unwelcome harassment; (3) that the harassment was based on their membership in a protected class; (4) that the harassment was severe enough or pervasive enough to alter the conditions of their employment and create an abusive work environment; (5) the harassment was both objectively and subjectively offensive; and (6) there is some basis for employer liability. *Flood v. Bank of Am.*

---

claim based on gender and age such that it will consider these arguments for efficiency's sake.

*Corp.*, 780 F.3d 1, 10 (1st Cir. 2015); *O'Rourke v. City of Providence*, 235 F.3d 713, 728 (1st Cir. 2001).

Plaintiffs have met the first three elements of the prima facie case. There is no dispute that, as women, they are members of a protected class and the several claims of mistreatment and harassment, when taken in their favor, arguably meet the second and third elements. Plaintiffs' claims falter upon examination of the record evidence on the fourth element—whether the harassment was sufficiently severe or pervasive.

The First Circuit has imparted a clear legal standard that a plaintiff must meet regarding the "severe and pervasive and abusive work environment" element. It mandates that, to be considered hostile, the environment must be "'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment.'" *Kosereis v. Rhode Island*, 331 F.3d 207, 216 (1st Cir. 2003) (internal citations omitted) (name calling, teasing, offensive utterances and offhand comments "do not rise to the level of 'severe or pervasive conduct,' that is required for a hostile work environment claim."); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998).

Plaintiffs rely on many instances of disparate treatment, where male employees were given superior benefits and accommodation, to prove that Defendants' conduct was severe and pervasive. They also refer to the times they complained about treatment they found to be unsafe, demeaning, and intimidating.

11

ECF No. 70-2 at ¶¶ 30, 41, 56, 66, 67. Under any interpretation of the caselaw none of these instances, individually or collectively, are enough to meet their burden. They cite offhand comments that were hurtful and disrespectful, in an environment that was stressful and busy. But neither Plaintiff can demonstrate that any of this conduct was "objectively offensive" such that it "interfered with [their] work performance to an extent that is unreasonable or that altered the conditions of [their] employment." *Vega-Colon v. Wyeth Pharmaceuticals*, 625 F.3d 22, 32 (1st Cir. 2010). "Offhand comments and a tense or uncomfortable working relationship with one's supervisor are, without more, insufficient to support a hostile work environment claim." *Flood*, 780 F.3d at 12.

This Court is conscious of the fact that an analysis of a hostile work environment claim is "fact specific" and that the "determination is often reserved for a fact finder." *Vega-Colon*, 625 F.3d at 32 (quoting *Pomales v. Celulares Telefonica, Inc.*, 447 F.3d 79, 83 (1st Cir. 2006)). But analyzing all of the undisputed material facts, the Court finds that the evidence of Defendants' actions are not enough to establish that Ms. Ricci and Ms. Galvin faced an environment of severe and pervasive hostility based on their gender and Ms. Ricci's age.

Plaintiffs' retaliation claims suffer the same fate. Ms. Galvin argues that she was treated differently from similarly situated male employees and terminated for taking a medical leave. Ms. Ricci argues that she was treated differently from male employees when she was denied a medical leave and terminated for not returning to work. "To maintain a claim of discriminatory retaliation, a plaintiff must produce

evidence that (1) [s]he engaged in protected conduct under Title VII; (2) [s]he experienced an adverse employment action; and (3) a causal connection exists between the protected conduct and the adverse action." *Kosereis*, 331 F.3d at 217 (citing *Gu v. Boston Police Dep't*, 312 F.3d 6, 14 (1st Cir. 2002)).

Again, the record does not permit even a reasonable inference of a causal connection to be drawn between Defendants' decision to terminate Plaintiffs and their requests for and/or denial of medical leave. Ms. Galvin was allowed to take a medical leave and was terminated only after she made it clear that could not return. Ms. Ricci was not given a statutory leave, but Defendants gave her the four week leave when she requested it. She was also terminated only after she could not return to work. Additionally, Plaintiffs identify several male employees without providing specifics, who they believe were allowed to take medical leaves without the same restrictions imposed on them. ECF No. 70-2 at ¶¶ 9, 10, 16, 66, 67. Absent concrete evidence, Plaintiffs' statements retain the character of allegations without evidentiary support and would put the jury in a position to speculate about the evidence.

Plaintiffs' claim of discriminatory retaliatory firing fails for lack of evidence. Therefore, Defendants' motion for summary judgment is granted on Counts I, II, and III.

### B.    COUNT IV—Age Discrimination

Ms. Ricci alleges that Defendants violated the Age Discrimination in Employment Act. The ADEA makes it unlawful for an employer to "discharge ... or otherwise discriminate against any individual with respect to h[er] compensation,

terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "To state a claim under the ADEA, a plaintiff must establish that [s]he 'suffered an adverse job action, that this was motivated by age, and that [s]he suffered injury as a result of it.'" *Collazo v. Nicholson*, 535 F.3d 41, 44 (1st Cir. 2008) (quoting *Melendez–Arroyo v. Cutler–Hammer de P.R. Co.*, 273 F.3d 30, 33 (1st Cir. 2001)). A prima facie showing under the ADEA is that she was over forty years old, she was terminated, her job duties were assumed by another person, she was qualified to do her job, and was not terminated for poor performance. *Rossi v. Amica Mut. Ins. Co.*, 446 F. Supp. 2d 62, 70 (D.R.I. 2005).

Taking all inferences in Ms. Ricci's favor, the Court finds that she has met the prima facie showing. Now, the burden shifts to Defendants to give a legitimate, nondiscriminatory, reason for terminating her. Defendants argue that they temporarily filled her position with Mr. Glines, a younger male employee, during Ms. Ricci's medical leave and kept him in the position when she said that she could not return to the office with or without an accommodation. Given Defendants' undisputed contention that it was understaffed after both Ms. Ricci and Ms. Galvin took medical leaves at the same time, the Court finds that Defendants have met their burden to show a legitimate reason for temporarily filling her position and then terminating her employment when she shared that she could not return.

Now the burden shifts back to Ms. Ricci to show that the reason Defendants gave is pretextual and the real reason is based on age discrimination. It is undisputed that Defendants denied her official FMLA leave but allowed her to stay out of work

for four weeks while she tried to comply with the statutory requirements.[6] Mr. Glines had been hired in September 2014 as an Assistant Property Manager. ECF No. 70-2 at ¶ 65. It is undisputed that Mr. Glines, who was shifted to cover Ms. Ricci's duties temporarily until her return, was less experienced (and therefore compensated less) at the job. *Id.* When Defendants asked her to return to work, she said she could not return and did not convey that an accommodation could get her back to work so Mr. Glines remained in the position. Ms. Ricci's age was not a factor in Mr. Glines' temporary appointment. There is no disputed evidence on which a jury could find that Ms. Ricci was denied leave, terminated, or otherwise pushed out of Defendants' employ based on her age. Defendants' motion for summary judgment on Count IV is granted.

## C.   COUNT V AND VI—Family and Medical Leave Claims

Plaintiffs next argue that Defendants retaliated against them for taking medical leaves by terminating them with no legitimate grounds to do so. As women, they argue that they were treated in a disparate fashion in comparison to their male counterparts. They also allege interference. They make these claims under FMLA and RIPFMLA.

The FMLA and RIPFMLA prohibit an employer from retaliating against an employee for taking a medical leave. 29 C.F.R. § 2615(b); R.I. Gen. Laws § 28-48-5.

---

[6] Ms. Ricci heavily ties this claim to her FMLA claim, arguing that she would never have been terminated if Defendants gave her the FMLA leave, in part alleging that Defendants denied her the FMLA leave to start the process of terminating her because she was older. There is no evidence of this motive.

An employee can make a prima facie showing of illegal retaliation if she demonstrates that "(1) [s]he availed [her]self of a protected right under the FMLA; (2) [s]he was adversely affected by an employment decision; (3) [and] there is a causal connection between the employee[s'] protected activity and the employer's adverse employer action."[7] *Cham v. Station Operators, Inc.*, 832 F. Supp. 2d 131, 135 (D.R.I. 2011) (quoting *Hodgens*, 144 F.3d at 161).

Ms. Galvin was allowed a medical leave under the FMLA. When she revealed that she could not return to work after the full thirteen-week period, Defendants terminated her employment as they could no longer function without a permanent, full-time staff member. ECF No. 70-2 at ¶ 46. Ms. Ricci was not qualified for an FMLA leave but was allowed to take a four-week medical leave based on a doctor's note. When her FMLA leave was denied, she told Defendants that she could not return to work and, when asked, provided no information about whether a reasonable accommodation would help her get back to work. *Id.* at ¶ 57. Defendants terminated her for the same reason that they terminated Ms. Galvin—faced with two (out of four) full-time employees who could not say when they could come back to work, Defendants made the decision to move on from Ms. Galvin and Ms. Ricci. While their termination occurred relatively close in time to the medical leaves, temporal proximity alone is often not enough to establish a causal connection, especially if the reality of the situation undercuts any claim of causation. *See Carrero-Ojeda v.*

---

[7] The elements of the RIPFMLA are "essentially the same elements as the corresponding federal laws" and the "disposition of the federal claims likewise disposes of the parallel state law claims." *Hodgens,* 144 F.3d at 158 n. 1.

*Autoridad de Energia Electrica*, 755 F.3d 711, 720 (1st Cir. 2014). Therefore, after assessing the larger picture surrounding Plaintiffs' retaliation claim, the Court finds that they have failed to establish a causal connection between any medical leave or denial of medical leave and Defendants' actions that a trier of fact could reasonable resolve in Plaintiffs' favor. Plaintiffs do not establish a prima facie case for retaliation under the FMLA or RIPFMLA. The Court will now consider Defendants' motion on the interference aspect of Plaintiffs' claim.

To prove a prima facie case for interference, a plaintiff must show that: 1) she was an eligible employee under the statutes; 2) she worked for the employer; 3) she was entitled to FMLA leave; 4) she gave adequate notice to the employer of her intention to take leave; 5) the employer denied her the benefits of the leave. *Washington v. Honeywell Int'l, Inc.*, 323 F. Supp. 3d 309, 315-16 (D.R.I. 2018). Based on the record, the Court finds that neither Plaintiff can make out a prima facie case.

Ms. Ricci had no right to FMLA leave because it is undisputed that she submitted the required certification from her chiropractor, not a physician. A chiropractor can only certify leave if the treatment prescribed consists of manual manipulation of the spine to correct a subluxation as showed by an x-ray to exist. 29 U.S.C. § 2613. Ms. Ricci's chiropractor did not so certify in her submissions accompanying her request for leave even after Defendants informed her of the failure

and allowed her to submit qualifying paperwork.[8]  ECF No. 70-2 at ¶¶ 50-53; 55-57. Because she did not submit proper leave certification, she was not entitled to leave.

Ms. Galvin was not denied any benefits under the FMLA—Defendants granted her the full thirteen weeks of leave.  *Id.* at ¶¶ 39, 40, 43, 44.  She raises certain facts as proof that Defendants interfered with her leave, but to no avail.  It is undisputed that Defendants asked her to get a second opinion before granting her leave, but that is permitted under the statute.  She also argues that Defendants' requirement that she call in to confirm her status each morning she was out constituted an interference, but that was Defendants' stated policy in the Employee Handbook—a policy she knew because she received the Handbook.  There is no interference here. The Court grants summary judgment to Defendants on Counts V and VI.

### D.    COUNT VII–Disability Discrimination

Plaintiffs argue that Defendants violated the ADA by unlawfully terminating, retaliating against, and not accommodating them in the face of their disabilities. Title III of the ADA provides that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . ." 42 U.S.C. § 12182(a).  The statute also stipulates that "a failure to make reasonable modifications … when necessary" is discrimination unless the entity in question can

---

[8] On June 5, 2015, after Defendants denied her FMLA and asked her to return to work and she refused, Ms. Ricci emailed a note from her chiropractor showing that she was receiving manual manipulation.  She did not reference a request for FMLA leave or a previous certification attempt.  ECF No. 70-2 at ¶ 58.

show that "such modifications would fundamentally alter the nature" of the program. 42 U.S.C. § 12182(b)(2)(A)(ii).

"A prima facie case of disability discrimination requires the plaintiff to show that (1) she was disabled within the meaning of the ADA, (2) she was a 'qualified individual,' and (3) the defendant took an adverse employment action against her on the basis of her disability." *Pena v. Honeywell Int'l, Inc.*, 923 F.3d 18, 27 (1st Cir. 2019). "To establish a claim for failure to accommodate, a plaintiff must produce sufficient evidence for a reasonable jury to find that (1) she was disabled within the meaning of the ADA, (2) she was a qualified individual, and (3) the defendant, despite knowing of her disability, 'did not reasonably accommodate it.'" *Id.* at 31 (quoting *Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 107 (1st Cir. 2005). A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

It is uncontested that both Ms. Ricci and Ms. Galvin had medical conditions that qualified as disabilities. The main issue that both parties highlight is whether Plaintiffs were "qualified individuals"—i.e., whether they could have performed their essential functions with or without a reasonable accommodation. Plaintiffs argue that there is evidence that they were open to an accommodation to enable them to return to work and Defendants violated the ADA by failing to engage them in a process to determine if a reasonable accommodation—including offering to extend

their medical leaves–was feasible to implement so they could come back to work.[9] Defendants argue that neither Plaintiff could say whether they were able to return to work with or without an accommodation and neither even asked for an accommodation. The undisputed facts support Defendants' position.

Ms. Galvin's approved FMLA leave ended on July 20, 2015 and she did not return to work. ECF No. 70-2 at ¶ 44. She testified that she did not have a date for her return, but it would be when she felt better and when her doctor cleared her to return. *Id.* at ¶ 45. Ms. Galvin was not medically cleared to return to work at the end of her FMLA-approved leave in July; her doctor wrote her out of work through August 4, 2015. *Id.* at ¶ 47. There is no evidence that Ms. Galvin asked to extend her medical leave or for any other accommodation. Defendants terminated her by letter of August 7, 2015. *Id.* at ¶ 46.

Ms. Ricci asked to be out of work for medical reasons for four weeks starting April 19, 2015. *Id.* at ¶ 33. After two attempts to produce the proper paperwork and about a month's time, Defendants determined that she was not eligible for an FMLA leave and asked her to return to work by June 1, 2015, offering to provide her with a reasonable accommodation so that she could perform her job. *Id.* at ¶ 56. Ms. Ricci responded that she could not return to work with or without an accommodation and told Defendants that she needed further medical evaluations to determine whether an accommodation would help. *Id.* at ¶ 57. There is no evidence that she discussed

---

[9] Plaintiffs also argue that there are disputed facts over what the essential functions of their jobs are, but the Court finds no evidence of a dispute in the record.

such an accommodation with Defendants.  She was not cleared to work in June and Defendants terminated her in August.  *Id.* at ¶¶ 59-60.

Because the Court finds from the undisputed evidence that neither Ms. Galvin nor Ms. Ricci could resume their essential job duties with or without a reasonable accommodation, they were not "qualified individuals" under the ADA.  While the law protects employees with disabilities by requiring that their needs be accommodated if possible, it does not require employers affirmatively to craft the accommodation without an employee's input and approval.  That neither Plaintiff met Defendants halfway in proposing alterations to their essential functions that would suit their specific needs disqualifies them from arguing unlawful termination and failure to accommodate.

Plaintiffs' retaliation claim under the ADA similarly fails.  The ADA forbids retaliation "against any individual because such individual has opposed any act or practice made unlawful ... or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the ADA.  42 U.S.C. § 12203(a).  To establish a prima facie retaliation claim, Plaintiffs must show that they "1) [] engaged in protected conduct, 2) [] was subject to adverse action . . ., and 3) there was a causal connection between the protected conduct and the adverse action."  *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 41 (1st Cir. 2012).

Temporal proximity in the causation element is key.  The protected conduct and adverse employment action must be very close to prove a retaliation claim.  *Pena,*

923 F.3d at 32. "Without some corroborating evidence suggestive of causation . . . a gap of several months cannot alone ground an inference of a causal connection between a complaint and an allegedly retaliatory action." *Ahern v. Shinseki*, 629 F.3d 49, 58 (1st Cir. 2010). Here, Defendants granted Ms. Galvin's FMLA leave and, even though Defendants determined that she was not qualified for an FMLA leave, allowed Ms. Ricci to take four weeks of medical leave beginning in April 2015. They were terminated in August 2015 after they stated that they could not return to work and had requested no accommodation that would have allowed them to return to work. There is no disputed evidence on which a jury could determine that Plaintiffs' termination was in retaliation for their assertion of disability or their medical leaves.

As a result, Defendants' motion for summary on Plaintiffs' ADA claim is granted.

## IV.   CONCLUSION

This Court has reflected many times that summary judgment is a drastic remedy. But the First Circuit counsels that "[o]ver time, summary judgment has proven its usefulness as a means of avoiding full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways." *Mesnick*, 950 F.2d at 822. There are no disputed material facts supporting Plaintiffs' claims for discrimination and retaliation based on protected status and conduct on which a jury could find in their favor. "Hence, while courts should apply the controlling standards carefully in all cases—and especially in cases that present

difficult issues of proof—summary judgment can be appropriately entered even where elusive concepts such as motive or intent are involved." *Id.*

The Court GRANTS Defendants' Motion for Summary Judgment.  ECF No. 39. The Court DENIES Defendants' Motion to Strike.  ECF No. 57.  The Court GRANTS Plaintiffs' Motions to Amend/Correct.  ECF No. 70, 72.

IT IS SO ORDERED.

John J. McConnell, Jr.
Chief Judge
United States District Court

September 2, 2020